# IN RE: RONALD EDWARD GILLETTE, Petitioner.

S. Ct. Civil No. 2015-0055
Supreme Court of the Virgin Islands
March 15, 2016

JOSEPH A. DIRUZZO, III, ESQ., Fuerst Ittleman David & Joseph, PL, Miami, FL, *Attorney for Petitioner*.

KIMBERLY L. SALISBURY, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Respondent Diane Prosper*.

HONORABLE HAROLD W.L. WILLOCKS, Superior Court Judge, St. Croix, USVI, *Nominal Respondent*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(March 15, 2016)

PER CURIAM. This matter is before the Court on a petition for writ of mandamus filed by Ronald Edward Gillette. In his petition, Gillette maintains that the Superior Court judge assigned to his underlying habeas corpus petition, *Gillette v. Prosper*, Super. Ct. Civ. No. 439/2014 (STX)

441

(the "Nominal Respondent"), has failed to take any substantive action for almost a year and a half. For the reasons that follow, we grant the petition and direct the Nominal Respondent to consider and rule on Gillette's petition for writ of habeas corpus within 60 days, or take other meaningful action to further disposition of Gillette's case in that period.

## I. BACKGROUND

On April 11, 2008, Gillette was found guilty of multiple counts of first- and second-degree aggravated rape and unlawful sexual contact in violation of sections 1700, 1700a, 1708, and 1709 of title 14 of the Virgin Islands Code. On November 10, 2014, Gillette filed a petition for writ of habeas corpus with the Superior Court, challenging his convictions on numerous grounds, including alleged violations of his Fifth, Sixth, and Fourteenth Amendment rights. Within two weeks, he also filed a motion to proceed *in forma pauperis*, a motion to establish a briefing schedule, and a motion to reassign or transfer the case to a different judge. Approximately three months later, Diane Prosper — the Warden of the Golden Grove Adult Correctional Facility, whom Gillette named as the respondent to his habeas corpus petition — moved to dismiss the petition, and opposed the motion to reassign. Later that month, Gillette filed replies to each of the Warden's submissions.

Over the next several months, the Superior Court failed to take any action on any of these motions or other filings. On June 17, 2015, Gillette filed the instant petition for writ of mandamus with this Court, which relied on *In re Elliot*, 54 V.I. 423 (V.I. 2010), for the proposition that the Nominal Respondent's failure to take any action on his habeas corpus petition for seven months was tantamount to a failure to exercise jurisdiction. After Gillette filed his petition, the Nominal Respondent issued a one-paragraph order on June 23, 2015, that summarily denied the motion to reassign or transfer. And on July 23, 2015, the Superior Court summarily granted Gillette's motion to proceed *in forma pauperis*.

Over the course of the next several months, this Court ordered Gillette and the Clerk of the Superior Court to transmit additional portions of the record to assist in understanding the mandamus petition. *See* V.I.S.CT.R. 13(a). After receiving these documents, this Court, in a December 11, 2015 order, permitted the Nominal Respondent to file an answer to Gillette's petition within 21 days. *See* V.I.S.CT.R. 13(b). Specifically, this Court expressed concern that the Nominal Respondent had only issued

summary decisions on the motions to reassign and to proceed *in forma pauperis* shortly after Gillette filed his mandamus petition with this Court, and had not yet ruled on the Warden's motion to dismiss or Gillette's habeas corpus petition.

Although the 21-day response period has lapsed, the Nominal Respondent did not file any documents with this Court. *See* V.I.S.CT.R. 13(b). Moreover, the record reflects that the Nominal Respondent has not issued any orders in the underlying matter since the July 23, 2015 order granting Gillette's motion to proceed *in forma pauperis*. Consequently, this matter is now ripe for disposition by this Court.

## II. DISCUSSION

■ This Court has jurisdiction over original proceedings for mandamus pursuant to title 4, section 32(b) of the Virgin Islands Code. "However, a writ of mandamus is a drastic remedy which should be granted only in extraordinary circumstances." *In re Morton*, 56 V.I. 313, 319 (V.I. 2012). "To obtain a writ of mandamus, [the petitioner] must establish that his right to the writ is clear and indisputable and that he has no other adequate means to attain the desired relief." *In re Fleming*, 56 V.I. 460, 464 (V.I. 2012). But "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Moorhead v. Mapp*, 62 V.I. 595, 600 (V.I. 2015) (quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81 (2004)).

■ We conclude that Gillette has met his burden as to all three factors. "A party possesses a 'clear and indisputable' right when the relief sought constitutes a 'specific, ministerial act, devoid of the exercise of judgment or discretion.' " *Fleming*, 56 V.I. at 464; *Morton*, 56 V.I. at 319; *In re People of the V.I.*, 51 V.I. 374, 387 (V.I. 2009) (quoting *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997)). As this Court has previously explained, the failure of a Superior Court judge to issue a ruling in a timely manner may rise to the level of a breach of a ministerial duty:

> Because "the manner in which a court disposes of cases on its docket is within its discretion," a trial court's delay in ruling on a motion will generally not warrant mandamus relief. *In re Robinson*, 336 Fed. Appx. 171, 172 (3d Cir. 2009). "Nonetheless, mandamus may be war-

ranted when a [trial] [c]ourt's 'undue delay is tantamount to a failure to exercise jurisdiction.' " *Id.* (quoting *Madden v. Myers*, 102 F.3d 74, 79 (3d Cir.1982)). In other words, "[w]hile it is a basic premise that an appellate court lacks the power to compel a trial judge to do a particular act involving or requiring discretion on his part, this Court is empowered to order a trial judge to exercise his discretion in some manner." *O'Donniley v. Golden*, 860 S.W.2d 267, 269 (Tex. App. 1993).

*Elliot*, 54 V.I. at 429. The need for a judge to issue a ruling in a timely manner is particularly important in habeas corpus cases, given that the Legislature has mandated that habeas petitions receive expedited consideration. *See* 5 V.I.C. § 1304 ("The court authorized to grant the writ, to whom a petition therefor is presented, shall grant the same *without delay*, if it appears that the writ ought to issue.") (emphasis added).

This Court has already held that the failure of a Superior Court judge to take substantive action on habeas corpus petitions for approximately two years and 18 months, respectively, generally constitutes a breach of the ministerial duty to issue a ruling in a timely manner. *See In re Fleming*, 56 V.I. at 466; *Elliot*, 54 V.I. at 430-31. Although, in certain circumstances, such a lengthy delay may be excused, the fact that the Nominal Respondent has not filed an answer limits our inquiry solely to determining if a potential legitimate reason for the delay is readily apparent on the face of the record before us. *Fleming*, 56 V.I. at 465. Here, the record contains no indication that Gillette has filed "a flurry of complex or frivolous motions" so as to justify the Superior Court's failure to rule on his petition for approximately a year-and-a-half. *Id.* at 466. Moreover, Gillette was only convicted in 2008, and the certified docket transmitted to this Court by the Clerk of the Superior Court contains no indication that the Nominal Respondent has encountered difficulty in obtaining necessary materials from that prior proceeding. *Elliot*, 54 V.I. at 430 (citing *Johnson v. Rogers*, 917 F.2d 1283, 1285 (10th Cir. 1990)).

█ Additionally, as we have previously explained, "[g]ranting the writ of habeas corpus . . . constitutes an intermediate step in the statutory procedure," and does not require that the Superior Court determine whether the habeas petitioner is entitled to the ultimate relief sought. *Rivera-Moreno v. Gov't of the V.I.*, 61 V.I. 279, 311 (V.I. 2014) (citing 5 V.I.C. § 1304). "Instead, issuing the writ and serving it on the Government respondents simply requires the Government to file a return

responding to the petition and to produce the petitioner in court for a hearing on the merits of his allegations." *Blyden v. Gov't of the V.I.*, 64 V.I. 367 (V.I. 2016). Therefore, even if the issues Gillette has raised in his petition are complex due to his many convictions and multiple constitutional claims, the determination the Superior Court must make at this stage of the proceedings is straightforward: does Gillette's petition "state[ ] a prima facie case for relief — that is, whether it states facts that, if true, entitle [him] to relief — and also whether the stated claims are for any reason procedurally barred." *Id.* at 376 (quoting *Rivera-Moreno*, 61 V.I. at 311). Consequently, on the scant record before us, we conclude that Gillette has demonstrated a clear and indisputable right to a timely ruling on his habeas corpus petition.

We also agree with Gillette that he lacks any other adequate means of obtaining a ruling on his petition for writ of habeas corpus, other than mandamus relief from this Court. The breach of ministerial duty that Gillette alleges — a failure to rule for approximately one and one-half years — is one that this Court cannot review on direct appeal, given that the Nominal Respondent's continued failure to rule precludes entry of an appealable final judgment. *Fleming*, 56 V.I. at 466 (citing *Elliot*, 54 V.I. at 425). And because the Nominal Respondent has only entered two orders in this case, each of which summarily resolved a relatively simple motion, there are no practical avenues for attaining relief that have been untried. *See In re People of the V.I.*, 55 V.I. 851, 858 (V.I. 2011).

Finally, we conclude that issuance of a writ of mandamus is appropriate under the circumstances. "To determine whether a writ of mandamus is appropriate under the circumstances, we consider factors including, but not limited to, the public interest, the importance or unimportance of the question presented, and equity and justice." *In re People*, 51 V.I. at 393 (collecting cases). As we noted earlier, the Legislature has mandated that the Superior Court consider petitions for writ of habeas corpus "without delay." 5 V.I.C. § 1304. Consequently, granting mandamus relief in this case would not simply further Gillette's private interests, but would "effectuate[ ] the intent of the Legislature" and "assist[ ] in the administration of justice." *Elliot*, 54 V.I. at 432. *See also McGuinness v. Pepe*, 150 F. Supp. 2d 227, 230 n.8 (D. Mass. 2001) ("[A] habeas petitioner who has, in fact, been deprived of liberty unconstitutionally suffers irreparable injury enduring each day of wrongful incarceration.").

445

## III. CONCLUSION

We find that Gillette has a clear and indisputable right to have the Nominal Respondent rule on his habeas corpus petition since, based on our independent review of the record without the benefit of a response from the Nominal Respondent, we cannot find any legitimate excuse for the nearly one and one-half year delay. Furthermore, Gillette lacks an adequate alternate means of obtaining redress. Accordingly, since the public interest and other considerations strongly support mandamus relief, this Court shall issue a writ of mandamus directing the Nominal Respondent to rule on Gillette's habeas corpus petition within 60 days of the date of this Opinion, or take other meaningful action to further the disposition of Gillette's case in that period, such as issuing a ruling on the Warden's motion to dismiss.